**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| RONNIE MONTGOMERY, | DOCKET NUMBER |
| Appellant, | AT-0752-20-0275-X-1 |
| v. | |
| U.S. POSTAL SERVICE, | DATE: July 23, 2026 |
| Agency. | |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Ronnie Montgomery, Horn Lake, Mississippi, pro se.

Eric B. Fryda, Esquire, Plano, Texas, for the agency.

James M. Reed, Esquire, Clearwater, Florida, for the agency.

Roderick Eves, Esquire, St. Louis, Missouri, for the agency.

### BEFORE

Henry J. Kerner, Vice Chairman
James J. Woodruff II, Member

### FINAL ORDER

In a February 27, 2024 compliance initial decision, the administrative judge found the agency in noncompliance with the Board's order reversing the appellant's placement on enforced leave to the extent the agency imposed improper conditions upon his return to duty and its remission of all back pay due to him.

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

*Montgomery v. U.S. Postal Service*, MSPB Docket No. AT-0752-20-0275-I-3, Remand Order (Apr. 19, 2023); *Montgomery v. U.S. Postal Service*, MSPB Docket No. AT-0752-20-0275-C-1, Compliance File (CF), Tab 9, Compliance Initial Decision (CID). For the reasons discussed below, we now find the agency in compliance and DISMISS the petition for enforcement.

## DISCUSSION OF ARGUMENTS AND EVIDENCE OF COMPLIANCE

The appellant, a preference eligible, holds a Laborer Custodial position at the agency's Southaven Post Office. *Montgomery v. U.S. Postal Service*, MSPB Docket No. AT-0752-20-0275-I-2, Appeal File (I-2 AF), Tab 7 at 10. On August 21, 2019, the agency proposed to place him on enforced leave due to his "alleged medical condition" and, pending a decision on the proposal, placed him on administrative leave. I-2 AF, Tab 4 at 32. By letter dated January 13, 2020, the agency notified the appellant of its decision to effect the enforced leave action "based on [his] current medical restrictions." *Id.* at 17-19. The appellant timely appealed his placement on enforced leave to the Board.

In a March 16, 2022 initial decision, the administrative judge reversed the enforced leave action based on the agency's failure to prove its charge, found that the appellant proved his union reprisal affirmative defense but not his other affirmative defenses, and dismissed his Family and Medical Leave Act claim for lack of jurisdiction. *Montgomery v. U.S. Postal Service*, MSPB Docket No. AT-0752-20-0275-I-3, Appeal File, Tab 17, Initial Decision (ID). The administrative judge ordered the agency to cancel the appellant's placement on enforced leave; restore him to duty effective as of the date his placement on enforced leave began; and provide him the correct amount of back pay, interest on back pay, and restored benefits. ID at 16-17. He also ordered the agency to provide the appellant interim relief if either party filed a petition for review. ID at 17.

The appellant petitioned for review of the initial decision. *Montgomery v. U.S. Postal Service*, MSPB Docket No. AT-0752-20-0275-I-3, Petition for Review File, Tab 1. In an April 19, 2023 Remand Order, the Board affirmed the

administrative judge's findings except for his determination that the appellant failed to timely raise his race discrimination affirmative defense, which the Board vacated and remanded for further adjudication.[2] Remand Order, ¶¶ 1-11. Notwithstanding the remand proceedings on the race discrimination claim, the Board ordered the agency to provide the relief identified in the initial decision and notified the appellant of his right to file a petition for enforcement if he was not satisfied with the agency's compliance. *Id.*, ¶¶ 12-16.

On November 5, 2023, the appellant petitioned for enforcement of the April 19, 2023 Remand Order. CF, Tab 1. The agency responded that it had been unable to return the appellant to duty because he had not cooperated with its request for updated medical documentation establishing that he could perform the essential functions of his position with or without accommodation. CF, Tab 4 at 4-6. The agency submitted copies of its return-to-duty letters dated March 17, May 10, and June 21, 2022, informing the appellant that he had to provide this documentation before he could be returned to duty. *Id.* at 8-11. The agency also stated and provided evidence showing that it issued the appellant a check for back pay dated June 30, 2023, in the amount of $76,833.32, which covered the period from February 1, 2020 (the date it stated his enforced leave became effective),[3] through July 1, 2022 (the deadline to respond given in the third return-to-duty letter); and a July 6, 2023 check for interest on back pay in the amount of $14,291.29. *Id.* at 5, 13-14. The agency stated that the appellant was not entitled to back pay after July 1, 2022 (pay period 15 of 2022), because the agency had made "every effort" to return him to work but the appellant had not cooperated. *Id.* at 6.

In a February 27, 2024 compliance initial decision, the administrative judge found that the agency was in noncompliance with the Board's Remand Order to the

---

[2] On remand, the administrative judge denied the appellant's affirmative defense of race discrimination. *Montgomery v. U.S. Postal Service*, MSPB Docket No. AT-0752-20-0275-B-1, Remand File, Tab 14, Remand Initial Decision. On the appellant's petition for review, the Board affirmed the remand initial decision by Final Order dated November 25, 2025. *Montgomery v. U.S. Postal Service*, MSPB Docket No. AT-0752-20-0275-B-1, Final Order (Nov. 25, 2025).

extent it imposed improper conditions upon the appellant's return to duty and its remission of all back pay due to him. CID at 1-5. Accordingly, he granted the appellant's petition for enforcement and again ordered the agency to return the appellant to duty effective the date of his placement on enforced leave and to pay him the appropriate amount of additional back pay, with interest, and to adjust benefits with appropriate credits and deductions. CID at 5-6. Neither party petitioned for review of the compliance initial decision, and the appellant's petition for enforcement has been referred to the Board for a final decision on compliance pursuant to 5 C.F.R. § 1201.183(c). *Montgomery v. U.S. Postal Service*, MSPB Docket No. AT-0752-20-0275-X-1, Compliance Referral File (CRF), Tab 1.

During the pendency of the compliance referral matter, the parties have both filed multiple submissions. The appellant argues that the agency remains in noncompliance and has moved for leave to file an interlocutory appeal, interim relief, a stay, and extensions of time.[4] CRF, Tabs 4-5, 8, 10-11, 13, 18, 20, 22, 25, 27-33. The agency argues that it is in compliance and requests that this matter be dismissed. CRF, Tabs 2, 7, 9, 12, 15, 19, 21, 24, 26.

---

[3] Although the decision letter purported to be effective earlier, the record reflects that the appellant received paid administrative leave through January 31, 2020. *See Montgomery v. U.S. Postal Service*, MSPB Docket No. AT-0752-20-0275-X-1, Compliance Referral File, Tab 7 at 5 n.3 (noting that the enforced leave decision letter "mistakenly identifies the effective date as Friday, January 10, 2019," which was "a Thursday while January 10, 2020, was a Friday."), 42-43 (decision letter reflecting that the enforced leave action "will be effective upon receipt or Friday, January, 10, 2019, whichever occurs soonest"), 44-45 (showing the appellant received paid administrative leave in pay periods 2-3 of 2020), Tab 26 at 36 (stating that the appellant did not receive any back pay from pay period 18 of 2019 through pay period 3 of 2020 because he "already received full base pay via administrative leave hours during this timeframe"). The appellant has not challenged the agency's determination that the effective date of his placement on enforced leave was February 1, 2020.

[4] The appellant also argues that the administrative judge abused his discretion by denying his request for discovery during the compliance proceeding. CRF, Tab 8 at 16. But this claim is beyond the scope of the current proceeding. In the compliance initial decision, the administrative judge denied the appellant's request for discovery because he did not timely serve his discovery requests on the agency. CID at 3 n.2. The appellant did not petition for review of the compliance initial decision, and he may not now challenge the findings therein in this compliance referral proceeding. *See* 5 C.F.R. §§ 1201.114-1201.115, 1201.183.

<u>The appellant's motions are denied.</u>

As a preliminary matter, we deny the appellant's motions for interim relief, interlocutory review, extensions of time, and a stay until the Board decides his pending motions. CRF, Tabs 5, 8, 11, 13, 22, 25.

First, the appellant's request for interim relief is moot and misplaced in this enforcement proceeding. *See* CRF, Tab 8. Under 5 U.S.C. § 7701(b)(2), if the appellant is the prevailing party, the initial decision will provide appropriate interim relief to the appellant effective upon the date of the initial decision and remaining in effect until the date of the final order of the Board on any petition for review, unless the judge determines that the granting of interim relief is not appropriate. 5 C.F.R. § 1201.111(c). Here, the administrative judge ordered the agency to provide the appellant interim relief in the March 16, 2022 initial decision reversing the enforced leave action.[5] ID at 17. However, the interim relief order only remained in effect until issuance of the Board's April 19, 2023 Remand Order, which affirmed the administrative judge's reversal of the enforced leave action, ordered the agency to cancel the enforced leave action and provide the appellant all back pay and benefits, and notified the appellant of his right to file a petition for enforcement if he believed the agency did not fully comply with the Board's Remand Order. Remand Order at 9-10. Accordingly, the agency's compliance with the interim relief order is now moot. *See Elder v. Department of the Air Force*, 124 M.S.P.R. 12, ¶ 20 (2016) (a final decision renders the issue of the agency's compliance with an interim relief order moot). Moreover, this enforcement proceeding is limited to the issue of whether the agency has complied with the Board's Remand Order, which is final as to the reversal of the enforced leave action. *See* 5 U.S.C. § 1204(a)(2); 5 C.F.R. §§ 1201.181(a), 1201.183(c).

The appellant's requests for interlocutory review of various matters are also misplaced. *See* CRF, Tabs 5, 13, 22. An interlocutory appeal is an appeal to the Board of a ruling made by a judge during a proceeding and may be allowed only if

---

[5] The agency immediately issued the conditional return-to-duty letters to the appellant in an apparent attempt to comply with the interim relief order. CF, Tab 4 at 8-11.

the judge determines that the issue presented is of such importance to the proceeding that it requires the Board's immediate attention. *See* 5 C.F.R. § 1201.91. The current proceeding is already before the Board, not an administrative judge. Moreover, there has been no ruling on the matters that the appellant requests be certified for interlocutory review—namely, whether he is entitled to certain benefits as part of his status quo ante relief, interim relief, and involuntary retirement as a result of the agency's alleged noncompliance. As such, interlocutory review is not appropriate. 5 C.F.R. §§ 1201.181(a), 1201.183(c). The Board will decide in this proceeding which benefits the appellant is entitled to as part of his status quo ante relief and whether the agency has provided them; the other matters are beyond the scope of this enforcement proceeding.[6]

We find that no further extensions of time for the appellant to respond to the agency's submissions are warranted because the appellant received ample time to respond to each of the agency's filings.

Finally, we find that this decision denying the appellant's motions renders moot his request for a stay of this proceeding until the Board issues a decision on his pending motions.

The agency is in compliance with the Board's Remand Order.

When, as here, the Board finds a personnel action unwarranted, the aim is to place the appellant, as nearly as possible, in the situation he would have been in had the wrongful personnel action not occurred, i.e., the status quo ante. *Vaughan v. Department of Agriculture*, 116 M.S.P.R. 319, ¶ 5 (2011); *see Kerr v. National Endowment for the Arts*, 726 F.2d 730, 733 (Fed. Cir. 1984). The agency bears the burden to prove compliance with the Board's order by a preponderance of the evidence.[7] *Vaughan*, 116 M.S.P.R. 319, ¶ 5; 5 C.F.R. § 1201.183(d). An agency's assertions of compliance must include a clear explanation of its compliance actions

---

[6] If the appellant has retired and wishes to pursue an involuntary retirement claim, he may file a separate constructive removal adverse action appeal with the appropriate MSPB regional office. *See Lorenz v. U.S. Postal Service*, 84 M.S.P.R. 670, ¶ 5 (2000). The Board makes no findings here regarding the timeliness or merits of such an appeal.

supported by documentary evidence. *Vaughan*, 116 M.S.P.R. 319, ¶ 5. The appellant may rebut the agency's evidence of compliance by making specific, nonconclusory, and supported assertions of continued noncompliance. *Id.*

*Reinstatement*

In providing an employee status quo ante relief, the agency must, among other things, reinstate the employee to his former position and duties absent a strong overriding interest or compelling reasons for not doing so. *Tubesing v. Department of Health and Human Services*, 115 M.S.P.R. 327, ¶ 5 (2010).

Here, the agency has submitted evidence showing that it ordered the appellant back to work with no preconditions by letter dated May 17, 2023. CRF, Tab 2 at 24. Additionally, the agency has provided Standard Form 50s showing that the appellant is currently assigned to the same position and work location that he held prior to the enforced leave action. CRF, Tab 26 at 11-12. Though it appears that the appellant has not reported to duty since the agency issued the unconditional return-to-work letter, he does not dispute that the agency has ordered him to return to the same position he held prior to the enforced leave action. Instead, he argues that the agency has not properly reinstated him because it has denied some of his requests for paid leave since ordering him back to work. *E.g.*, CRF, Tab 13 at 7-8, Tab 20 at 10-11, Tab 26 at 4-5. The agency responded with evidence showing that it has granted many of the appellant's requests for paid leave since the May 17, 2023 return-to-work letter, but that some have been denied because the appellant did not follow the proper leave requesting procedures. CRF, Tab 26 at 7-9, 112-41.

We find that the agency's evidence establishes that it properly reinstated the appellant effective May 17, 2023, when it unconditionally directed him to return to work in his prior position. The appellant's decision not to report for duty and his disagreement with the agency's denial of some of his paid leave requests for failure

---

[7] A preponderance of the evidence is the degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue. 5 C.F.R. § 1201.4(q).

to follow leave requesting procedures do not rebut the agency's evidence of compliance in this regard.

*References to the enforced leave action*

Restoration to the status quo ante additionally requires that the agency remove all references to the adverse action from the appellant's personnel file. *Tyrrell v. Department of Veterans Affairs*, 60 M.S.P.R. 276, 278 (1994).

The agency has submitted a declaration signed under penalty of perjury from K.K., the Manager of Labor Relations, Alabama-Mississippi District, attesting that she "reviewed the Appellant's Discipline File maintained by the District as well as the Appellant's electronic Official Personnel Folder (eOPF) and [] determined there is no reference to enforced leave contained in any of [those] records . . . ." CRF, Tab 26 at 13. The agency also submitted a declaration signed under penalty of perjury from M.W., the Postmaster of the Southaven Post Office, attesting that he "reviewed the unofficial files related to the Appellant that are maintained in Southaven and [] determined there is no reference to enforced leave contained in [those] records . . . ." *Id.* at 15.

In response, the appellant argues that the agency "has not produce [sic] any new PSF-3972 for the following Leave Year (2019 thru the present) that show all enforced leave (LWOP) has been removed . . . ." CRF, Tab 28 at 5.

We credit the agency's sworn evidence that all references to the enforced leave action have been removed from the appellant's eOPF and unofficial records maintained at Southaven Post Office. In addition, although the agency did not submit an updated PS Form 3972 with its most recent submission, the PS Form 3972 it previously submitted shows that the appellant was not recorded as LWOP at any time during the back pay period February 1, 2020, through May 17, 2023. CRF, Tab 5 at 6-12. Accordingly, we find the agency in compliance with its obligation to remove references to the enforced leave action from the appellant's personnel file.

*Back Pay with Interest*

The appellant is entitled to all the pay, allowances, and differentials he would have received but for the unwarranted enforced leave action and interest on that amount.[8] *See* 5 U.S.C. § 5596(b)(1)(A); 5 C.F.R. §§ 550.805-550.806. As described below, the agency has submitted evidence showing that it has issued three separate back pay payments to the appellant totaling $120,588.83, which represents a gross back pay amount of $219,550.02, less deductions, and $26,107.26 in interest.

First, on June 30, 2023, the agency paid the appellant a net back pay payment of $76,833.32, covering the period from February 1, 2020 (pay period 4 of 2020), through July 1, 2022 (pay period 14 of 2022), excluding pay periods 22-24 of 2020.[9] CRF, Tab 7 at 14, 16-28. This net payment resulted from a gross back pay amount of $142,121.91—representing 80 hours per pay period of base pay only at an annual base salary between $60,610.00 and $66,062.00—minus deductions of $41,073.21 for Federal and state taxes, Social Security, and Medicare, and $24,215.47 in voluntary deductions for union dues, retirement, and Thrift Savings Plan (TSP) contributions. *Id.* at 16-28. On July 7, 2023, the agency paid the appellant $14,291.29 in interest on the June 30, 2023 back pay payment. *Id.* at 15.

Second, on July 18, 2024, the agency paid the appellant $32,565.55 for the period from July 2, 2022 (pay period 15 of 2022), through May 19, 2023 (pay period 11 of 2023). CRF, Tab 7 at 33, 35-41. The agency's evidence shows that it derived the net payment from a gross back pay amount of $60,689.01—representing 80 hours per pay period of base pay only at an annual base salary between

---

[8] As a preference-eligible employee of the Postal Service, the appellant's entitlement to back pay is governed by the Back Pay Act, 5 U.S.C. § 5596, and 5 C.F.R. § 550.805. *Ford v. U.S. Postal Service*, 118 M.S.P.R. 10, ¶ 13 (2012).

[9] The agency calculated the appellant's back pay beginning upon issuance of the August 21, 2019 notice of placement on enforced leave, but excluded pay periods 18-26 of 2019 and pay periods 1-3 of 2020, because he already received paid administrative leave for that time. *See supra* n.3; I-2 AF, Tab 4 at 17; CRF, Tab 7 at 6, 16. The agency excluded pay periods 22-24 of 2020 from the back pay calculation because the appellant used paid leave during those pay periods. CRF, Tab 7 at 29-31. As described below, the agency has now restored that paid leave.

$66,062.00 and $69,556.00—minus deductions of $17,796.54 for Federal and state taxes, Social Security, and Medicare, and $10,326.92 in voluntary deductions for union dues, retirement, and TSP contributions. *Id.* at 35-41. On July 30, 2024, the agency issued the appellant interest on this back pay payment in the amount of $7,489.05. *Id.* at 34.

Third, on May 28, 2025, the agency paid the appellant $11,189.96 for overtime and night differential pay for the period from January 10, 2020, through May 18, 2023.[10] CRF, Tab 21 at 4, 8, 19-25. This net payment derived from a gross back pay amount of $16,739.10, less $5,549.14 for Federal and state taxes, Social Security, and Medicare. *Id.* at 8-9, 19-25. The agency explained that the appellant was entitled to 350.87 hours of overtime (2.02 hours per pay period) and 255.6 hours of night differential (1.46 hours per pay period) based on his historical overtime hours for the 3-year period from August 1, 2016, through August 1, 2019, during which he worked a total of 312.84 hours of overtime (104.29 per year) and 227.87 hours of night differential (75.95 hours per year). CRF, Tab 15 at 4-5. The agency provided the appellant's historical time and attendance reports for the 3-year period showing, in relevant part, his overtime hours (hours code 053) and night differential hours (hours code 054) during that period. *Id.* at 4-5, 31-340; CRF, Tab 7 at 32. On June 17, 2025, the agency paid the appellant interest on the May 28, 2025 payment in the amount of $4,327.35. CRF, Tab 26 at 151-52.

The appellant argues that he is entitled to more overtime back pay for union duties and "Line H compensation." *E.g.*, CRF, Tab 4 at 8-9, 15, Tab 8 at 10, Tab 18 at 14, Tab 28 at 4-5. We disagree. An agency may compute an employee's overtime back pay based on either the appellant's own overtime history or the average overtime hours worked by similarly situated employees during the relevant time period. *Rittgers v. Department of Army*, 123 M.S.P.R. 31, ¶ 13 (2015). The

---

[10] The agency stated that it used January 10, 2020, as the start date for its premium pay back pay calculations (rather, apparently, than the February 1, 2020 date it used to calculate his first back pay payment) because the administrative judge ordered the appellant reinstated as of January 13, 2020, based on the effective date stated in the enforced leave decision letter. CRF, Tab 21 at 4-5; *see supra* n.3.

Board will not nullify the method used by the agency to calculate overtime back pay in the absence of a showing that the method was unreasonable or unworkable. *Id.* Here, the agency's chosen method of historical overtime hours is not unworkable or unreasonable, and it therefore was an acceptable method to calculate the appellant's overtime entitlement.

Moreover, the appellant has not shown that "Line H compensation" is a differential he would have received but for the enforced leave action. He explains that, under the Memorandum of Understanding (MOU) between the union and the agency, each facility must use at least 90% of the total custodial work hours available each year (shown at Line H of PS Form 4852 "Workload Analysis and Summary"), or pay overtime hours to the custodial employee(s) to make up the difference.[11] CRF, Tab 4 at 8-9, 15, Tab 8 at 10, Tab 28 at 4-5; *see* CRF, Tab 24 at 16-18. The appellant argues that there was custodial understaffing during the back pay period due to his own placement on enforced leave, entitling him additional overtime back pay for up to 20 hours per pay period. CRF, Tab 8 at 10. The appellant is incorrect. While he is entitled to be returned to the status quo ante, he is not entitled to be placed in a better position than he would have enjoyed had the adverse action not occurred. *Oates v. Department of Health and Human Services*, 64 M.S.P.R. 349, 351 (1994); 5 C.F.R. § 550.805(b) (No employee shall be granted more pay, allowances, and differentials . . . than he or she would have

---

[11] The appellant provided a copy of the relevant section of the MOU, which states:

> In facilities that are maintained by USPS custodians, upon the conclusion of each Postal Fiscal Year (FY), during October of the new FY, the total custodial work hours for the just completed fiscal year shown on the end of year report(s) for Labor Distribution Code (LDC) 38 (custodial work) will be compared with 90% of the custodial work hours shown on Line H of PS form 4852. The results will be provided to and discussed with the Local [American Postal Workers Union (APWU)] President or designee. Falling short of 90% of the work hours shown on PS Form 4852 Line H will result in compensation for each hour short of 90% of the hours on PS Form 4852 Line H paid at the overtime rate to the custodial employees who will be identified in writing by the APWU Local Union. The APWU Local Union will determine the appropriate custodial employee(s) to compensate.

CRF, Tab 4 at 63.

been entitled to receive if the unjustified or unwarranted personnel action had not occurred.). Consequently, he cannot receive additional overtime back pay as a result of understaffing created by his own placement on enforced leave, which would put him in a better position than he would have enjoyed had the adverse action not occurred.[12]

The appellant also argues that he is entitled to 8 hours per day of out-of-schedule premium pay that he would have received had agency had granted his requests for a transfer or reassignment to the Tennessee District in 2022-2023. *E.g.*, CRF, Tab 4 at 9, Tab 27 at 9-10. Assuming arguendo the appellant would have received such a transfer in the absence of the enforced leave action, however, he has not provided specific, nonconclusory, and supported assertions sufficient to show he would have received the claimed out-of-schedule pay in that position. *See Vaughan*, 116 M.S.P.R. 319, ¶ 5. We note that his historical time and attendance records for the 3 years preceding the enforced leave action show that he did not receive any out-of-schedule pay (hours code 073). *See* CRF, Tab 7 at 32, Tab 15 at 4-5, 31-340. Accordingly, we find that the appellant's assertion of entitlement to out-of-schedule premium pay does not rebut the agency's evidence showing that it calculated and paid the premium pay it owed to him.

The appellant has not specifically challenged the agency's other calculations regarding the back pay or interest owed to him, and we therefore assume he is satisfied with those payments. *See Baumgartner v. Department of Housing and Urban Development*, 111 M.S.P.R. 86, ¶ 9 (2009). Moreover, based on the agency's evidence and explanation, we find that the agency paid the appellant the appropriate amount of back pay with interest and is in compliance with its back pay and interest obligations.

---

[12] In addition, compensation for understaffing under the MOU is paid to custodial employees at the discretion of the local union, rather than as a benefit the appellant would have received *but for* the reversed personnel action. *See* CRF, Tab 4 at 63.

*Restored Leave*

The appellant is also entitled, as part of his status quo ante relief, to restoration of all leave he would have earned but for the reversed enforced leave action and to restoration of any paid leave he used during the enforced leave period. *See Rivera v. U.S. Postal Service*, 107 M.S.P.R. 542, ¶ 9 n.5 (2007) (an award of back pay includes the restoration of leave); *see also Crutch v. U.S. Postal Service*, 119 M.S.P.R. 460, ¶ 25 (2013) (ordering the agency to restore to the appellant any annual or sick leave used during the constructive suspension period), *overruled on other grounds by Abbott v. U.S. Postal Service*, 121 M.S.P.R. 294, ¶ 10 (2014).

In its April 23, 2025 submission, the agency stated that it restored to the appellant 104.62 hours of annual leave and 92 hours of sick leave in pay period 15 of 2024, and 464 hours of annual leave and 252 hours of sick leave in pay period 13 of 2023, totaling 568.62 hours of annual leave and 344 hours of sick leave. CRF, Tab 15 at 5. The agency stated that these amounts could be confirmed by comparing the payroll journals provided for the pay period in which the adjustment was made with the prior pay period. *Id.* at 5, 342-405. As the Board pointed out in its September 30, 2025 Order, however, the agency did not explain how it arrived at these restored leave totals, and the payroll journals did not appear to confirm them. CRF, Tab 23 at 4.

In its December 30, 2025 submission, the agency provided a November 12, 2025 declaration under penalty of perjury from P.T., the Lead Systems Accountant at the Postal Services Accounting Service Center. CRF, Tab 26 at 35-44. Therein, P.T. explained that the appellant would have earned one leave increment (8 hours of annual and 4 hours of sick leave) per 80 base (work) hours during the back pay period, entitling him to restoration of 19 increments of leave in 2020 (152 hours of annual and 76 hours of sick leave), 26 increments in 2021 (208 hours of annual and 104 hours of sick leave), 27 increments in 2022 (216 hours of annual and 108 hours of sick leave, and 9 increments in 2023 (72 hours of annual and 36 hours of sick leave), i.e., 648 hours of annual leave and 396 hours of sick leave. *Id.* at 36-37. In addition, she noted, the appellant used 192 hours of annual leave and 72 hours of

sick leave in pay periods 22-25 of 2020, which the agency restored to him. *Id.* at 38. P.T. stated that the agency had not properly restored the appellant's sick and annual leave and described in detail how they should have been updated and carried forward based on the back pay awards. *Id.* at 35, 38-42. She stated that she updated the appellant's leave balances to correct the error by crediting him with an additional 271.38 hours of annual leave and 52 hours of sick leave effective pay period 13 of 2025. *Id.* at 35, 43, 54-55.

The appellant has not challenged these calculations in his responses to the agency's December 30, 2025 submission, and we therefore assume he is satisfied with the restoration of his sick and annual leave. *See* CRF, Tabs 27-33; *Baumgartner*, 111 M.S.P.R. at ¶ 9. Furthermore, we find that the agency's evidence demonstrates that it has restored the correct amount of sick and annual leave to the appellant. As described above, the agency's evidence reflects that it has now restored to the appellant 840 hours of annual leave and 396 hours of sick leave, which is the amount he should have received during the back pay period (648 hours of annual and 324 hours of sick leave) plus restoration of the sick and annual leave he used in 2020 (192 of annual and 72 of sick leave). *See* CRF, Tab 26 at 35-43, 48-49, 51-52, 54-55.

*Voluntary Transfer/Reassignment*

The appellant argues that the agency denied his requests for a voluntary transfer or reassignment to the Tennessee District in 2022 and 2023 because of the enforced leave action. CRF, Tab 4 at 4-9, Tab 18 at 13-14, 17-18, Tab 20 at 8, Tab 27 at 7-9. In support, he has provided copies of letters from October 2022 and November 2023 denying his requests for reassignment to the Tennessee District based on his "unacceptable attendance records." CRF, Tab 4 at 45-48. He argues that the agency must redo the selection process without considering the enforced leave. CRF, Tab 27 at 7. He also cited to and provided a copy of USPS-APWU Joint Contract Interpretation Manual Article 12.6, which governs voluntary reassignments to other geographical areas. CRF, Tab 4 at 57-59.

As set forth above, the purpose of the Board's status quo ante order is to place the appellant as nearly as possible in the situation he would have been in but for the agency's unwarranted personnel action. *See Kerr*, 726 F.2d at 733. Although it does not appear that the Board has previously addressed whether an appellant may receive a voluntary transfer or reassignment as part of his status quo ante relief, we find the situation analogous to those involving a promotion as status quo ante relief. In such cases, the Board has held that "the established rule is that one is not entitled to the benefit of a position until he has been appointed to it," but that an agency will be required to reinstate the employee to the higher level position "if some provision of law mandates a promotion during the interim period" or "if the employee could 'clearly establish' that he would in fact have been promoted . . . ." *Dow v. General Services Administration*, 117 M.S.P.R. 616, 623 (2012) (citing *United States v. Testan*, 424 U.S. 392, 402 (1976)) (quoting *Boese v. Department of the Air Force*, 784 F.2d 388, 390 (Fed. Cir. 1986)). Applying this rationale here, the appellant is entitled to a voluntary transfer or reassignment as part of his status quo ante relief only if a provision of law mandates it, or if he can "clearly establish" that he would have been transferred or reassigned but for the enforced leave action.

The appellant has submitted evidence showing that his requests for voluntary transfers or reassignments were denied due to "unacceptable attendance records." CRF, Tab 4 at 45-48. Although this evidence raises the possibility that the appellant would have received the requested voluntary reassignment if he had not been placed on enforced leave from February 1, 2020, through May 17, 2023, we cannot find that it "clearly establishes" that fact. *Cf. Pernell v. Department of Veterans Affairs*, 118 M.S.P.R. 15, ¶ 8 (2012) (finding the appellant was entitled to a promotion as part of her status quo ante relief where the record and collective bargaining agreement clearly established she would have received a promotion but for the reversed removal action). The appellant effectively asks the Board to presume that he would have been reassigned absent the enforced leave action, but the Federal Circuit has rejected such a presumption. *See Naekel v. Department of*

*Transportation*, 850 F.2d 682, 684 (Fed. Cir. 1988) (At best, to assume he would have been promoted is speculative.). The appellant also has not pointed to any provision of law mandating a voluntary transfer or reassignment. To the contrary, Article 12.6 affords the agency discretion in whether to grant a request for voluntary transfer, providing that they "will not be unreasonably denied," but allowing for consideration of local economic, unemployment, and equal employment opportunity factors, as well as requiring the employee to have an "acceptable work, attendance, and safety record." CRF, Tab 4 at 58-59. Accordingly, we find that the appellant has not met his burden to show that he is entitled to a voluntary transfer as part of his status quo ante relief, and the agency's failure to provide such relief does not preclude a finding of compliance.

## CONCLUSION

In light of the foregoing, we find that the agency is in compliance with its outstanding compliance obligations and dismiss the appellant's petition for enforcement. This is the final decision of the Merit Systems Protection Board in this compliance proceeding. Title 5 of the Code of Federal Regulations, section 1201.183(c)(1) (5 C.F.R. § 1201.183(c)(1)).

## NOTICE TO THE APPELLANT REGARDING YOUR RIGHT TO REQUEST ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set out at Title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your attorney fees motion with the office that issued the initial decision on your appeal.

**NOTICE OF APPEAL RIGHTS**[13]

You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

---

[13] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all

other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[14] The court of appeals must receive your petition for

---

[14] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017. The All Circuit Review Act, signed into law by the President on

review within **60 days** of <u>the date of issuance</u> of this decision.   5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.   Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.   The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

---

July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction.  The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:                        *Gina K. Grippando*
                                      _____
                                      Gina K. Grippando
                                      Clerk of the Board

Washington, D.C.